**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
**Maxwell L. Billek, Esq. (055101993)**
**Michael P. Chipko, Esq. (011902011)**
200 Campus Drive
Florham Park, New Jersey 07932-0668
Tel: (973) 624-0800
Fax: (973) 624-0808
Maxwell.Billek@wilsonelser.com
Michael.Chipko@wilsonelser.com

**BRADFORD, LTD**
**Aaron P. Bradford, Esq. (*pro hac vice* application forthcoming)**
2701 Lawrence Street, Suite 104
Denver, Colorado 80205
Telephone: (303) 325-5467
Facsimile: (844) 406-5294
Aaron@apb-law.com
Nina@apb-law.com
*Counsel for Plaintiff Onyx Enterprises Int'l, Corp.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ONYX ENTERPRISES INT'L, CORP.**, a New Jersey corporation, | |
| **Plaintiff,** | Case No. |
| v. | |
| **KHODROID,** a foreign corporation, | **COMPLAINT AND JURY TRIAL DEMAND** |
| **Defendant**. | |

Plaintiff Onyx Enterprises International, Corp. ("Onyx"), by and through undersigned counsel, hereby sues Defendant KhodroID ("KhodroID") and alleges as follows:

## <u>NATURE OF ACTION</u>

1.      This case involves KhodroID's intentional and blatant infringement of Onyx's well-known house mark, the iD® Mark, and Onyx's distinctive trade dress used in connection with the marketing, advertising, and sale of automotive products.

2.      KhodroID owns and operates a website that sells automotive products that mimics, almost identically, Onyx's distinctive trade dress.  KhodroID also owns and operates social media sites that promote KhodroID's sale of automotive products that utilize a mark identical to Onyx's iD® Mark.

3.      KhodroID's infringement and copying of both Onyx's signature trademark and trade dress are blatant, unauthorized, and encroach upon any acceptable notion of fair competition. In fact, KhodroID received a cease and desist letter in February of 2020 directed at KhodroID's blatant copying of Onyx's famous iD® Mark.  Exhibit 1.  Rather than respond, KhodroID proceeded to copy some or all of Onyx's coding for www.CARiD.com **after** receiving notice that KhodroID was unlawfully using Onyx's ID trademark.  KhodroID, in essence, doubled down on its illegal theft of Onyx's intellectual property in a way that can only be seen as intentional.   Onyx provided a second ceases and desist letter on April 28, 2020, to which no response was received necessitating this action.  Exhibit 2.

4.      Onyx brings this action for damages and injunctive relief for federal trademark infringement, federal trade dress infringement, federal unfair competition, false designation of origin, and dilution pursuant to the Lanham Act (15 U.S.C. § 1051, *et seq.*), and trademark

2

infringement, unfair competition, and deceptive trade practices pursuant to the New Jersey Consumer Fraud Act, N.J. Stat. §§56:8-1 to -204, and the common law of the State of New Jersey.

## PARTIES

5.      Onyx is a New Jersey corporation having a principal place of business at 1 Corporate Drive, Suite C, Cranbury, New Jersey 08512.

6.      Upon information and belief, KhodroID is an Iranian corporation having a principal place of business at Narges Gol Passage, Siraj Al-Molk Alley, First Floor, No. 6, Tehran, Iran.

## JURISDICTION & VENUE

7.      This Court has subject matter jurisdiction over the asserted claims under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a), and 1338(b).

8.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Onyx's state and common law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

9.      This Court has personal jurisdiction over KhodroID because it has committed tortious acts in this District through KhodroID's advertisements and proposed sale of goods using Plaintiff's trademark and trade dress.  KhodroID further maintains a website accessible in this District.

10.      Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) and (c) and under 28 U.S.C. § 1400(b) because KhodroID has committed substantial acts of infringement, as well as acts of unfair competition and deceptive trade practices in this Judicial District, and because they provide goods and do business within this Judicial District.

3

## FACTUAL ALLEGATIONS

## CREATION, GROWTH, AND SCOPE OF ONYX'S iD® MARK

11.     As early as 2008, Onyx deployed its iD® Mark to brand its eCommerce platform designed to sell complex product portfolios.  For more than a decade, Onyx has been singularly focused upon the creation of a unique, comprehensive, and reliable online customer experience for those seeking to purchase automotive products, both original equipment ("OE") and aftermarket ("AM") parts.  By reliably connecting consumers to millions of products from thousands of brands, Onyx drove consumer confidence in the purchase of automotive products online and established the iD® brand as the leader in online automotive product sales.

12.     Onyx is a pure online retailer.  When formed, the market for the online purchase of automotive parts was minimal.   In 2008, Onyx launched its first iD® branded platform, www.CARiD.com, and funded a consistent and persistent effort to compete with traditional channels for the sale of automotive products by creating demand for products online.



*(Screenshot from The Way Back Machine, December 2009)*

4

13.     To compete with traditional automotive retailers and create consumer confidence for the online purchase of automotive products, Onyx invested hundreds of millions of dollars marketing and developing its brand, constructing a proprietary platform coupled with a comprehensive product catalog featuring millions of OE/AM products from thousands of brands. Onyx also integrated customer service and consumer education components to create a comprehensive online experience that customers enjoy and companies respect.

14.     Through this effort, Onyx has grown the iD® brand into one of the largest online retailers of automotive products in the United States.  At the time it was formed in 2008, online traffic for the sale of automotive products was virtually non-existent, as depicted below.  Today, Onyx receives over 10 million visitors to its site each month, nearly three times its closest online direct competitor, as depicted below.



15.     Figure 1 is a graphical representation from a SpyFu, Inc.[1] demonstrating the number of monthly SEO clicks directed at the top pure online retailers from 2006 through the present. See Exhibit 3, Declaration of Aaron P. Bradford, Attachment 1.  Using only www.CARiD.com, Onyx represents the he top performer as represented by the top, red line below:



FIGURE 1

16.     Figure 2 is a graphical representation of the number of monthly clicks directed at a comparison of the top online retailers, with Onyx as the top line, from 2015 through the present. See Exhibit 3, Bradford Dec., Attachment 2.

---

[1] Figures 1-5 were derived from SpyFu, Inc., a third party with which Onyx has no relationship.  Figures 1-5 were generated using various publicly available competitor analysis tools available at www.spyfu.com.  Figures 1-5 are provided to demonstrate the relative market position of the selected domains over time.  Figures 1-5 were not produced using data maintained by Onyx.



FIGURE 2

17.     After Onyx launched its iD® platform in 2008, traditional automotive product retailers such as AutoZone, Advanced Auto Parts, O'Reilly Auto/Pep Boys, and NAPA started to heavily invest in eCommerce.  Specialty brick and mortar retailers, such as 4 Wheel Parts and others, also followed suit.  Figure 3 is a graphical representation of the performance, expressed in terms of monthly clicks, of the top six traditional retailers' domains from 2006 through the present. See Exhibit 3, Bradford Dec, Attachment 3.



FIGURE 3

18.     Through its concerted campaign to drive its iD® Mark to the center of consumer purchasing for automotive parts and accessories, Onyx has outperformed all traditional retailers online other than AutoZone.   See Exhibit 3, Bradford Dec., Attachment 4.   Onyx is again represented by the Red Line, which is just below AutoZone:



FIGURE 4

19.     Figure 4 is a graphical representation of the number of monthly clicks on the indicated domains from 2015 through the present.

20.     To achieve these results, Onyx committed substantial resources to ensure that it would perform relative to its competition, both traditional retailers and the field of pure eCommerce retailers.   Onyx has spent nearly $200 million in marketing its brand.

21.     To maintain its position relative to eCommerce and traditional retailers, Onyx has similarly outspent the competition to drive traffic to its iD® Branded platforms.

22.     As a result of its efforts, Onyx's online presence exceeds the profiles of its top online competitors according to SpyFu's Kombat feature:

8





FIGURE 5

23.     Like the end consumer, most automotive product manufacturers, both OE and AM, associate the iD® brand with Onyx and its unique, comprehensive, and reliable eCommerce platform.  Onyx works with manufacturers and distributors of OE and AM products ("the Brands") to build educational tools and product pages to connect the right customer, with the right Brand, for the right car.  The Brands associate the iD® Mark with quality service and professional product placement.

24.     The substantial brand power behind the iD® Mark that has been developed for over a decade is reflected in a consistent commercial impression:  When consumers and/or Brands see the iD® Mark with its unique properties and design elements, they know to expect quality, service, and professionalism, deriving from a very specific and distinguishable source.

25.     Leveraging its famous mark and the goodwill customers associate with the iD® brand, Onyx expanded its suite of eCommerce platforms into other complex market product portfolios.



26.     For example, Onyx developed and released its MOTORCYCLEiD® mark in July 2018. Similar to CARiD®, MOTORCYCLEiD® conveys to customers that they can come to Onyx—and MOTORCYCLEiD®—to identify the unique parts and pieces that are suited for that customer's particular motorcycle.

27.     For example, Onyx developed and released its TRUCKiD® mark in July 2018. Similar to CARiD®, TRUCKiD® conveys to customers that they can come to Onyx—and TRUCKiD®—to identify the unique parts and pieces that are suited for that customer's particular semi-truck or other oversized or commercial vehicle.

10

28.     Onyx's iD® Mark and the reputation it has developed in association with its iD® trademark and iD® brand have grown based on the quality associated with them.  Consequently, Onyx has registered the following marks: BOATiD®, CAMPERiD®, MOTORCYCLEiD®, POWERSPORTSiD®, RECREATIONiD®, STREETiD®, TOOLSiD®, and TRUCKiD®.  Onyx has launched associated eCommerce platforms utilizing the same trade dress.



11

| | |
|---|---|
| www.CAMPERiD.com |  |
| www.MOTORCYCLEiD.com | |
| www.POWERSPORTSiD.com | |

2981844v.1



| www.RECREATIONiD.com | |
| www.TOOLSiD.com | |

29.  Onyx's CARiD® branded services have received consistent high ratings.

30.  Onyx has an "Elite" rating of 9.5/10 out of about 102,877 reviews on www.ResellerRatings.com.  Based on the reviews submitted within the last six months, Onyx's CARiD® branded services has an average customer service rating of 9.09/10 and a "chance of future purchase" rating of 8.99/10.

31.  Onyx has an "A+" rating with the Better Business Bureau.

32.  Onyx has a 4.7 out of 5 on Google Reviews based upon just under 10,000 reviews.

33.     Onyx's CARiD® Facebook page currently has a 4.4/5 rating out of about 20,088 reviews.

34.     The CARiD® Instagram account currently has approximately 39,000 followers while the CARiD® Facebook account currently has over 2.5 million followers.  The CARiD® YouTube Channel has over 69,100 subscribers and over 35.6 million views.

35.     As a result of its efforts, including its extensive financial investment, Onyx has made a substantial amount of sales through its iD® brand in the United States and abroad.  Sales of products sold through Onyx's CARiD® and other iD® branded services have far exceeded those of the majority Onyx's direct competitors in the United States and abroad.

<u>**ONYX'S INTELLECTUAL PROPERTY PROTECTIONS**</u>

36.     In addition to the strong consumer recognition, the iD® brand enjoys substantial state and federal trademark protections given its ubiquitous and consistent use since 2008.  Onyx is the registered owner of the federal trademark registration for the stylized "iD" logo (Reg. No. 5658672) for "Wholesale distributorships featuring automotive parts and accessories; retail store services featuring automotive parts and accessories; online retail store services featuring automotive parts and accessories."  *See* Exhibit 4.



14

37.     Onyx owns the trademark application for its newly-stylized iD® logo (Reg. No. 5804750) for "Distributorship services featuring parts and accessories for land vehicles and water vehicles; Distributorship services featuring goods for travel and outdoor recreational activities; Distributorship services featuring tools."



38.     This application received no opposition and was registered on the Principal Register on July 16, 2019.  Onyx has been using this newly stylized iD® logo in some version in connection with its multiple retail platforms since at least 2013.

39.     Onyx is the registered owner of the federal trademark, wordmark, and registration for CARiD® (Reg. No. 3711746) for "Wholesale distributorships featuring automotive accessories; retail store services featuring automotive accessories; online retail store services featuring automotive accessories." Onyx has been using this trademark in connection with its eCommerce platform since at least 2008.

40.     Onyx owns U.S. Trademark Registrations and pending U.S Trademark Applications for the following marks, copies of which are attached as Exhibit 4:

| MARK | Reg./Ser. No. | Goods & Services |
|------|---------------|------------------|
| CARID | Reg. No. 3711746 | IC 035: Wholesale distributorships featuring automotive accessories; retail store services featuring automotive accessories; online retail store services featuring automotive accessories. (Date of First Use: at least as early as March 10, 2009) |

15

| | Reg. No. 5804750 | IC 035: Distributorship services featuring parts and accessories for land vehicles and water vehicles; Distributorship services featuring goods for travel and outdoor recreational activities; Distributorship services featuring tools. (Date of First Use: at least as early as June 1, 2018) |
|---|---|---|
| | Reg. No. 5658672 | IC 035: Wholesale distributorships featuring automotive parts and accessories; retail store services featuring automotive parts and accessories; online retail store services featuring automotive parts and accessories. (Date of First Use: at least as early as September 1, 2013) |
| | Ser. No. 87412406 | IC 002: Sealer coatings for use in the sealing of vehicle parts and during vehicle repairs; coatings for industrial purposes, namely, paints, aerosol paints, rust treatment coatings, undercoats in the nature of industrial sealants for waterproofing and surface hardening, insulation coatings, and rubberized coatings in the nature of industrial sealants for waterproofing and surface hardening; anti-corrosive oils<br><br>IC 003: Chemical cleaners directed to the the vehicle industries; windshield washing fluid; vehicle and car wax preparations<br><br>IC 004: Motor vehicle lubricants; Rust penetrant lubricants for vehicle exhaust systems, for hood release cables, for nuts and bolts, for shock absorbers, and other clips and cables of vehicles; penetrating oil; vehicle lubricants; vehicle lubricating greases; lubricating oils; automotive lubricants<br><br>IC 007: Vehicle equipment, namely, engine mufflers, spark plugs, gaskets, and chucks for power-operated drills; metal engine gaskets for vehicles |

2981844v.1

| | | |
|---|---|---|
| | | IC 009:        Batteries for motor vehicles; battery maintenance equipment, namely, cables, lugs, connectors, terminals, hardware, protectors, cable assemblies, bolts, and booster cables; battery chargers for motor vehicles<br><br>IC 012: ATVs (all terrain vehicles); automobiles and structural parts therefor; brake discs for motorcycles; motor scooters and structural parts therefor; motorcycle drive chains ; motorcycle foot pegs; motorcycle sprockets; motorcycles and structural parts therefor; motorized bicycles; motorized dirt bikes for motocross and dune buggies; motorized vehicles, namely, go-carts; parts of motorcycles, namely, brake cables; parts of motorcycles, namely, brake calipers; parts of motorcycles, namely, brake levers; parts of motorcycles, namely, brake master cylinder assemblies; parts of motorcycles, namely, brake rotors; parts of motorcycles, namely, clutch cables; parts of motorcycles, namely, clutch master cylinder assemblies; parts of motorcycles, namely, handle bar grips; parts of motorcycles, namely, handle bar throttles; parts of motorcycles, namely, handle bar grips; parts of motorcycles, namely, handle bars; parts of motorcycles, namely, master cylinders; parts of motorcycles, namely, shift levers; parts of motorcycles, namely, brake master cylinder assemblies; parts of motorcycles, namely, clutch master cylinder assemblies; vehicle parts, namely, rearview mirrors; push scooters and structural parts therefor<br><br>IC 025: Clothing, namely, t-shirts, sweatshirts, headwear and footwear |
| BOATiD | Reg. No. 5888908 | IC 035: Online retail store services featuring consumer products, electronics, parts and accessories for boats and water vehicles, boat safety, and boat maintenance; computerized online ordering featuring general merchandise and general |

| | | |
|---|---|---|
| | | consumer goods for boats and water vehicles, boat safety, and boat maintenance |
| CAMPERiD | Reg No. 58889090 | IC 035: Online retail store services in the field of outdoor consumer products, equipment, parts and accessories used with, or in association with, recreation vehicles, campers, cooking, towing, and other outdoor recreational activities; Online retail store services in the field of general merchandise and general consumer goods used for outdoor recreational activities |
| MOTORCYCLEiD | Reg. No. 5787890 | IC 035: Online retail store services featuring consumer products, electronics, apparel, protective wear, parts and accessories for motorcycles, dirt bikes, motocross bikes, scooters, and three-wheel bikes; computerized online ordering featuring general merchandise and general consumer goods including those used with motorcycles, dirt bikes, motocross bikes, scooters, and three-wheel bikes (Date of First Use: at least as early as July 1, 2018) |
| POWERSPORTSiD | Reg. No. 5787889 | IC 035: Online retail store services featuring consumer products, electronics, parts and accessories for powersports, namely, boating, snowmobiling, motorcycling, utility terrain vehicles, watercrafts, off-road vehicles, and all-terrain vehicles; computerized online ordering featuring general merchandise and general consumer goods including those used in support of powersports (Date of First Use: at least as early as July 1, 2018) |
| RACINGiD | Ser. No. 88303678 | IC 035: On-line retail store services featuring a wide variety of consumer goods of others; Online retail store services featuring consumer products, electronics, parts and accessories for land and water vehicles used for racing or high performance travel; Computerized online ordering featuring general consumer merchandise |

18

| RECREATIONiD | Reg. No. 5888910 | IC 035: Online retail store services in the field of consumer products, shoes, electronics, equipment, parts and accessories used with, or in association with, walking, camping, backpacking, hiking, tailgating, cooking, hunting, fishing, biking, towing, and other outdoor recreational activities; Online retail store services in the field of general merchandise and general consumer goods used for outdoor recreational activities |
| STREETiD | Reg. No. 5850420 | IC 035: On-line retail store services featuring a wide variety of consumer goods of others. |
| TOOLSiD | Reg. No. 5888911 | IC 035: Online retail store services featuring consumer products, electronics, parts and accessories associated with tools, namely, power tools, hand tools, lawn and garden tools, air tools, automotive tools, and construction tools; Online retail store services in the field of general merchandise and general consumer goods used for or with tools |
| TRUCKiD | Reg. No. 5787891 | IC 035: Online retail store services in the field of electronics, consumer products, parts and accessories directed to, or used in association with, trucks, semi-trucks, semi-tractor trailers, fifth wheels, trailers and towing; computerized online ordering featuring general merchandise and general consumer goods for those in the field of trucks, semi-trucks, semi-tractor trailers, fifth wheels, trailers and towing (Date of First Use: at least as early as July 1, 2018) |

41.     Registration No. 3711746 is "incontestable" under § 15 U.S.C. § 1065, and thereby is conclusive evidence of the validity of the registered mark and of Onyx's ownership of the mark.

42.     Consequently, its iD® brands have become distinctive and well-known in the industry as a symbol of Onyx's goodwill with manufacturers, distributors, resellers, industry

19

2981844v.1

publications, and consumers of vehicle parts and accessories.  The breadth and scope of Onyx's offerings is extensive, and many of the parts comprising a vehicle could be purchased through the platform.  As a result, its stylized iD® Mark has become famous and a strong indicator of source and affiliation.

43.     Onyx also owns valid and subsisting common law rights in the marks depicted below, which Onyx has continuously used in interstate commerce for many years:





44.     Onyx has also enforced its intellectual property rights to ensure the integrity and strength of its iD® Brands.  Apart from informal enforcement, Onyx has taken steps to protect the ID Brand in the following actions:

a.  *Onyx Enters. Int'l, Corp. v. Guangzhou Zezhong Elecs. Co., Ltd.*, No. 1:18-cv-03226 (D. Colo. filed Dec. 14, 2018).

b.  *Onyx Enters. Int'l, Corp. v. Sloan Int'l Holdings Corp.*, No. 0:20-cv-60871-RKA (S.D. Fla. filed Apr. 29, 2020).

c.  *Onyx Enters. Int'l, Corp. v. ID Parts, Inc.*, No. 1:20-cv-11253 (D. Mass. filed June 30, 2020).

d.  *Onyx Enters. Int'l, Corp. v. ID Auto, LLC*, No. 1:20-cv-05022 (S.D. N.Y. filed June 30, 2020).

### TRADE DRESS ASSOCIATED WITH THE ID PLATFORM

45.     Onyx is an innovator in the field of creation of eCommerce user experiences.  Onyx has employed a large work force to develop, design, and maintain multiple eCommerce platforms that feature Onyx's Trade Dress.

21

46.     Onyx's Trade Dress communicates to the consumer that they have entered a luxury niche buying experience filled with modern and graphical features strategically placed to help the consumer make the right buying decision.  Onyx's Trade Dress is characterized by a stylish and inviting landing page and a multitude of product, brand or service specific channels designed to usher the consumer toward the purchase of the right products for their needs using Onyx's proprietary and graphical searching tools.  From landing, through purchase, the consumer is met with a consistent theme of engaging and helpful graphical elements that have become synonymous with the Onyx experience.

47.     Onyx's Trade Dress is non-functional.  Onyx's Trade Dress is a unique source identifier that consumers value, recognize and associate with Onyx. Onyx's Trade Dress, as described herein, has been deployed in all of its active domains discussed in Paragraphs 25-28.

48.     On the launch page for each of the Onyx iD® brands the consumer sees Onyx's distinctive main navigation bar that contains Onyx's iD® Mark and specifically chosen icons for features such as Onyx's "Garage." Immediately under the main navigation bar is a vehicle search menu—to search by year, make, and model of vehicle—overlaid on the image of a vehicle.  The arrangement, palette of colors, font choices, and high-quality image selection of its launch page were designed with the purpose of creating a luxurious, inspiring, and user-friendly launch page. The combination of these design choices is distinctive trade dress owned by Onyx as depicted below:



49.    Onyx's vehicle search bar is a prominent feature at the top of the launch page even as a user scrolls down:

2981844v.1



**CUSTOMER REVIEWS**

50.     Additional trade dress elements continue throughout Onyx's launch page.  For example, Onyx's launch page permits a customer to select a type of product—interior, exterior, performance, and so on—through the use of unique icons representative of the category with Onyx's distinctive font underneath.  Below these product type icons, a scrolling column of select brands are featured using alluring, high-quality images and Onyx's distinctive font selection:

24



(screenshot from www.CARiD.com)

51.     Below these features are a more robust collection of product categories, again using exciting, high-quality images and Onyx's distinctive font selection:



(screenshot from www.CARiD.com)

52.    Onyx's page features additional non-functional elements to provide convenient selection options via distinctive, high-quality graphics.  For example, farther down the launch page, Onyx offers "Must Haves for Every Car" and "Shop by Service Type," listing options by whimsical grayscale icons, unique descriptions, and Onyx's distinctive font selection:

26

2981844v.1



53.     Near the bottom of Onyx's launch page is a mosaic of portals to Onyx's other iD®

brands, which are represented by bold, exciting images:



27

(screenshot from www.CARiD.com)

54.     This unique combination of design choices creates an overall look and feel for the

Onyx    eCommerce    platforms    found    at    www.CARiD.com,    www.TOOLSiD.com,

www.RECREATIONiD.com,        www.CAMPERiD.com,        www.POWERSPORTiD.com,

www.TRUCKiD.com,        www.BOATiD.com,        www.MOTORCYCLEiD.com        and

www.STREETiD.com that assures the consumer that the products offered are high quality and

inspiring, indulging in an unparalleled user-friendly experience.

55.     Indeed, when compared to the websites of competitors in Figures 1-6, the

distinctive trade dress of Onyx's eCommerce platform becomes abundantly clear:





29



**KhodroID**

56.     Onyx recently became aware of KhodroID, an Iranian company that also operates

an eCommerce website for the market and sale of automotive market products at

www.KhodroID.com.

57.     Upon information and belief, "Khodro" means "car" or "automobile" in Persian.

30

58.     KhodroID has used, and continues to this day to use, an ID mark that is practically identical to Onyx's iD® Mark, and trade dress that is confusing similar to that of Onyx. KhodroID's continued use of Onyx's iD® Mark and trade dress will confuse consumers and harm the decade-plus investment Onyx has made into its iD® brand and unique trade dress.

59.     Onyx initially provided notice to KhodroID in February of 2020 that it was unlawfully infringing its ID® mark.  See Exhibit 1.

60.     KhodroID did not respond to the February Notice. Rather, KhodroID proceeded to directly copy and deploy all of Onyx's Trade Dress on www.KhodroID.com as detailed in this complaint.

61.     Onyx provided KhodroID with a cease and desist letter on April 28, 2020. Exhibit 2. Despite notice, KhodroID has not responded and has continued to unlawfully utilize Onyx's trademarks and trade dress.

62.     Despite repeated requests to cease and desist its infringing use of Onyx's aforementioned intellectual property, KhodroID continues to operate the www.KhodroID.com website, which is illegally copying and utilizing distinctive trade dress owned by Onyx, and to operate social media accounts utilizing and infringing upon Onyx's iD® Mark.  In order to protect its iD® brand and related lines of eCommerce, Onyx brings this suit for trademark and trade dress infringement.

63.     Since at least as early as September 24, 2017, KhodroID has been intentionally, systematically, and blatantly copying—and unduly profiting from—both Onyx's iD® Mark and trade dress.

31

64.    Upon   information   and   belief,   KhodroID   operates   and   controls   the
www.KhodroID.com website and its social media accounts, and it provides retail services for
automotive products under the infringing www.KhodroID.com domain name.

65.    Upon information and belief, KhodroID had full knowledge of Onyx's ownership
of the iD® Mark and trade dress at least as early as September 24, 2017, including Onyx's
respective, exclusive rights to use and license such intellectual property and the goodwill
associated therewith.

66.    Upon information and belief, KhodroID had knowledge of Onyx's ownership of
both the iD® Mark and the trade dress because KhodroID was already using an identical copy of
the iD® Mark, and was already beginning to stylize its website to mimic Onyx's trade dress:



(screenshot of www.KhodroID.com as of September 24, 2017)

32

67.    Over time, KhodroID has systematically appropriated every aspect of Onyx's trade

dress.  Side by side comparisons of www.CARiD.com and www.KhodroID.com as they currently

appear show the intentional infringement and copying of Onyx's protected trade dress:



33



| | |
|---|---|
| Onyx's Navigation Sidebar | KhodroID's Navigation Sidebar |
| Onyx's Headlight Product Navigation | KhodroID's Headlight Product Navigation |
| Onyx's Product Category Selection | KhodroID's Product Category Selection |

34



| | |
|---|---|
| Onyx's Must Haves and Service Type | KhodroID's Car Consumables |
| Oyx's Portals to Other iD® brands | KhodroID's Portals to Other ID brands |

35



|  |  |
|---|---|
| Onyx's Vehicle Tracking Wizard | KhodroID's Vehicle Tracking Wizard |

68.     KhodroID has systematically copied every element of Onyx's launch page, including its trade dress: the fonts, the color palette, the images, the icons, and the design of each page section and navigation bar.  The result is an infringing website that has the same look and feel of Onyx's page.

69.     Indeed, when Onyx changed its logo in 2018, KhodroID even mimicked Onyx's newly released stylized iD® Mark:

2981844v.1



| Onyx's earlier logo | KhodroID's earlier logo |
|---|---|
| (screenshot of www.CARiD.com from 12/11/2015) | (screenshot of www.KhodroID.com from 4/22/2018) |

2981844v.1

| Onyx's updated logo | KhodroID's updated logo |
|---|---|
|  | |
| (screenshot of www.CARiD.com from 07/19/2018) | (screenshot of www.KhodroID.com from 11/19/2018) |

70.    Even now, KhodroID uses a mark with the same color scheme as, and is evocative of, the iD® Mark:



71.    KhodroID was so brazen and blatant in copying Onyx's intellectual property that it resulted to direct using photos from www.carid.com on its www.KhodroID.com website.  In fact, KhodroID's www.KhodroID.com website displays photos of Onyx's own employees who are wearing shirts bearing the iD® Mark:

38

2981844v.1





(screenshots from www.KhodroID.com of Onyx employees
wearing shirts with the iD® Mark)

72.     Although KhodroID recently changed its www.KhodroID.com logo to one that is

not an identical copy of the iD® Mark, KhodroID continues to use an exact copy of the iD® Mark

on multiple social media platforms:

39



(screenshots from KhodroID's LinkedIn and Twitter pages, respectively)

73.    While KhodroID has removed many instances of Onyx's iD® Mark from its

Instagram and Facebook pages, some instances remain:



(annotated screenshot from KhodroID's Instagram page)



(screenshots from KhodroID's Facebook pages, the first annotated)

74.      KhodroID has blatantly and intentionally misappropriated Onyx's trademark, trade

dress, and likeness through the unlawful use of Onyx's iD® Mark and trade dress to market and

sell automotive products in the United States.

42

75.     True and correct copies of the current and archived website versions for www.STREETiD.com and www.KhodroID.com as retrieved from www.web.archive.org and are attached as Exhibits 5 and 6, respectively.  True and correct copies of the website screenshots for the KhodroID LinkedIn, Twitter, Instagram, and Facebook accounts are attached as Exhibit 7.

76.     Upon information and belief, KhodroID initially created the www.KhodroID.com website and name with the intention of creating consumer confusion and passing off the www.KhodroID.com retail service as being associated with Onyx's iD® Mark.

77.     At all relevant times, Onyx began using its iD® Mark and its trade dress prior to KhodroID's use of the same mark and trade dress.

78.     KhodroID has acted purposefully and in bad faith to usurp the substantial goodwill that Onyx has developed under its iD® Mark,  If KhodroID is permitted to continue selling automotive products through www.KhodroID.com as it currently exists, will confuse and deceive consumers into believing that KhodroID's website and products are in some way affiliated or connected to Onyx's iD® brand when they are not.

79.     KhodroID has made and will continue to make substantial profits and gains off of the goodwill and value Onyx has acquired through its iD® Mark, iD® brand, and trade dress to which KhodroID is not entitled either in law or equity.

80.     Onyx is not affiliated or connected, directly or indirectly, with KhodroID or its products or services, nor has Onyx endorsed or sponsored KhodroID or its parts or services.

81.     Onyx has not in any way authorized KhodroID's use of Onyx's iD® Mark or trade dress.

82.     Onyx has no control over the nature and quality of the services or goods that KhodroID provides through the www.KhodroID.com website or under the infringing ID mark and trade dress.

83.     Upon information and belief, KhodroID does not provide services through the infringing www.KhodroID.com website or infringing ID mark and trade dress that meet the high standard and quality that consumers have come to associate with Onyx's iD® Mark.

84.     KhodroID's continued infringement of Onyx's iD® Mark and trade dress has caused, and will continue to cause, harm to the goodwill symbolized by Onyx's iD® Mark, trade dress and the reputation for quality and excellence that they embody.

85.     On February 13, 2020, Onyx contacted KhodroID informing it of its iD® Mark and trade dress. Onyx requested KhodroID cease infringing its intellectual property rights, including use of the infringing website domain www.KhodroID.com. KhodroID complained it was in danger of losing its website within 24 hours and claimed to change its logo and holograms as well as delete its Facebook and Instagram accounts. KhodroID made no changes to its infringing trade dress and failed to remove all instances of Onyx's iD® Mark from its website or social media accounts. KhodroID also did not delete its Facebook or Instagram accounts as claimed.

86.     Discussions with KhodroID stalled when it became apparent that KhodroID was not interested in correcting or ceasing use of its infringing www.KhodroID.com website or the infringing ID mark and trade dress.

44

87.     Thereafter, on April 28, 2020, Onyx, through counsel, notified KhodroID of Onyx's rights in its iD® Mark and requested that KhodroID cease using the infringing website, iD® Mark, and trade dress.  KhodroID did not respond.

88.     KHODORiD also continues to advertise, market, and sell competing automotive products in the same industry through its social media accounts using its infringing ID mark.

89.     KhodroID's actions have diluted, damaged, and will ultimately irreparably injure the value and goodwill of Onyx's iD® Mark and trade dress if permitted to continue.

90.     Absent injunctive relief, Onyx will continue to suffer irreparable harm in the loss of control of its reputation and goodwill in its iD® Mark and trade dress.

91.     This and all other damage to Onyx's reputation and goodwill in its iD® Mark, iD® brand, and trade dress resulting from the conduct alleged in this action cannot be easily quantified nor could it be undone through an award of money damages alone.

## COUNT I
### Federal Trademark Infringement in Violation of 15. U.S.C. § 1125(a)

92.     Onyx incorporates the allegations in Paragraphs 1 through 91 as if fully set forth herein.

93.     This cause of action arises under § 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114.

94.     Onyx is the owner of all right, title, and interest in, to and under its iD® Mark, and all goodwill appurtenant thereto.

45

95.    KhodroID has, without Onyx's consent, used copies or colorable imitations of Onyx's federally registered iD® Mark in commerce on or in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services.

96.    KhodroID has, without Onyx's consent, used in commerce designations that are copies or colorable imitations of Onyx's iD® Mark, as registered under U.S. Registration Nos. 5804750 and 5658672.

97.    KhodroID's unauthorized use of the Onyx's federally registered iD® Mark is likely to cause confusion, mistake, or deception; cause the public to believe that KhodroID's services are authorized, sponsored or approved by Onyx when they are not; and result in the KhodroID unfairly and illegally benefitting from Onyx's goodwill.

98.    KhodroID's knowing, intentional, unlicensed, unconsented to, and otherwise unauthorized use in commerce of Onyx's iD® Mark and/or substantially indistinguishable variations thereof constitutes infringement of Onyx's iD® Mark, in violation of 15 U.S.C. § 1114.

99.    The activities of KhodroID complained of herein constitute willful and intentional infringement of Onyx's iD® Mark in disregard of Onyx's proprietary rights and were done despite KhodroID's knowledge that use of these marks or any reproduction, copy, or colorable imitation thereof was and is in direct contravention of Onyx's rights.  Even though KhodroID received notice of its infringement in February of 2020, KhodroID intentionally and willfully continues its unauthorized use of the registered iD® Mark. Onyx is therefore entitled to statutory and treble damages.

46

100.    KhodroID's unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

101.    As a direct and proximate result of KhodroID's conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD® Mark and brands, resulting in lost revenues and profits and diminished goodwill.

102.    Onyx has no adequate remedy at law and, if KhodroID's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

**103.**    Onyx is therefore entitled to recover actual and treble damages, attorney fees, costs pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

## <u>COUNT II</u>

**Federal Trade Dress Infringement in Violation of 15. U.S.C. § 1125(a)**

104.    Onyx incorporates the allegations in Paragraphs 1 through 103 as if fully set forth herein.

105.    The trade dress owned by Onyx on www.CARiD.com, www.TOOLSiD.com, www.RECREATIONiD.com, www.CAMPERiD.com, www.POWERSPORTiD.com, www.TRUCKiD.com, www.BOATiD.com, www.MOTORCYCLEiD.com and www.STREETiD.com is non-functional.

106.    The trade dress owned by Onyx on www.CARiD.com, www.TOOLSiD.com, www.RECREATIONiD.com, www.CAMPERiD.com, www.POWERSPORTiD.com, www.TRUCKiD.com, www.BOATiD.com, www.MOTORCYCLEiD.com and www.STREETiD.com is unique and distinctive as to the source of Onyx's eCommerce platform

47

and products and has acquired secondary meaning because consumers associate these platforms as the source of goods provided under the trade dress owned by Onyx.

107.    The trade dress owned by Onyx on www.CARiD.com, www.TOOLSiD.com, www.RECREATIONiD.com, www.CAMPERiD.com, www.POWERSPORTiD.com, www.TRUCKiD.com, www.BOATiD.com, www.MOTORCYCLEiD.com and www.STREETiD.com is entitled to protection under both federal and common law.

108.    KhodroID's use in commerce of the Onyx Trade Dress found at www.CARiD.com, www.TOOLSiD.com, www.RECREATIONiD.com, www.CAMPERiD.com, www.POWERSPORTiD.com, www.TRUCKiD.com, www.BOATiD.com, www.MOTORCYCLEiD.com and www.STREETiD.com to advertise, market, promote, distribute, offer for sale, and/or sell automotive products without Onyx's consent, is likely to cause confusion, mistake, and/or deceive consumers into mistakenly believing that KhodroID is Onyx, or is a licensee, authorized distributor, or affiliate of Onyx, or that KhodroID, their activities, and/or their products, are authorized, endorsed, sponsored, or approved by Onyx, or vice versa.

109.    KhodroID has made, and will continue to make, substantial profits and gain from their unauthorized use of the trade dress owned by Onyx on www.CARiD.com, www.TOOLSiD.com, www.RECREATIONiD.com, www.CAMPERiD.com, www.POWERSPORTiD.com, www.TRUCKiD.com, www.BOATiD.com, www.MOTORCYCLEiD.com and www.STREETiD.com to which they are not entitled in either law or equity.

48

110.     The acts of KhodroID complained of herein were intentional, willful, with bad faith, and were committed with the intention of deceiving and misleading the public and causing harm to Onyx and made with the full knowledge of Onyx's trade dress rights.

111.     KhodroIDs' acts and conduct complained of herein constitute federal trade dress infringement in violation of 15 U.S.C. § 1125(a).

112.     Onyx has suffered, and will continue to suffer, irreparable harm from KhodroID's unauthorized use of the trade dress owned by Onyx on www.CARiD.com, www.TOOLSiD.com, www.RECREATIONiD.com, www.CAMPERiD.com, www.POWERSPORTiD.com, www.TRUCKiD.com, www.BOATiD.com, www.MOTORCYCLEiD.com and www.STREETiD.com unless restrained by law.

113.     As a direct and proximate result of KhodroID's infringing and unlawful acts, Onyx has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but in an amount to be established at trial.

<u>**COUNT III**</u>

**Federal Unfair Competition, and False Designation of Origin in**
**Violation of 15. U.S.C. § 1125(a)**

114.     Onyx incorporates the allegations in Paragraphs 1 through 113 as if fully set forth herein.

115.     This cause of action arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*

116.     Onyx is the owner of all right, title, and interest in, to and under its iD® Mark, and all goodwill appurtenant thereto.

49

117.    Onyx's iD® Mark has been continuously and widely used by Onyx nationwide and abroad, and on its website.  Onyx intends to preserve and maintain its rights to the iD® Mark and to continue the use of the iD® Mark in connection with its distributorship and retail store services relating to the distribution and sale of automotive products.

118.    By virtue of the renown of the iD® Mark, the iD® Mark have developed secondary meaning and significance in the mind of the relevant public.  Goods and services associated with the iD® Mark are immediately associated by the purchasing public with Onyx's iD® brand and its eCommerce platforms.

119.    Without Onyx's consent, KhodroID has used, and will continue to use, identical and/or confusingly similar imitations of Onyx's iD® Mark in interstate commerce.

120.    KhodroID's unauthorized use of Onyx's iD® Mark and/or confusingly similar variations thereof, is causing and is likely to continue to cause confusion, or to cause mistake, or to deceive, consumers and the relevant public into falsely believing that KhodroID is affiliated, connected, or associated with Onyx's iD® brand and the iD® Mark.

121.    Alternatively, KhodroID's unauthorized use of Onyx's iD® Mark and/or confusingly similar variations thereof, is causing and is likely to continue to cause reverse confusion, mistake, or deception in consumers and the relevant public into falsely believing that Onyx's iD® brand and the iD® Mark are affiliated, connected, or associated with KhodroID and its junior ID mark.

122.    The acts of KhodroID as alleged herein and above constitute trademark infringement, unfair competition, false representation, and/or false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

123.    KhodroID has engaged in this conduct knowingly, willfully, and in bad faith, in disregard of Onyx's proprietary rights.  Even though KhodroID received notice of its infringement, KhodroID intentionally and willfully continued its unauthorized use of Onyx's iD® Mark.  Onyx is therefore entitled to statutory and treble damages.

124.    KhodroID's conduct has deprived Onyx of its rightful ability to control the quality of goods and services uniquely associated with Onyx's iD® Mark and to ensure that its associated, valuable goodwill, and reputation are protected.  KhodroID's unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

125.    As a direct and proximate result of KhodroID's conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD® Mark and brands, resulting in lost revenues and profits and diminished goodwill.

126.    Onyx has no adequate remedy at law and, if KhodroID's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

127.    Onyx is therefore entitled to recover actual and treble damages, attorney fees, and costs pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

<u>**COUNT IV**</u>
**Unfair Competition in Violation of N.J. Stat. §§ 56.4-1–4.2**

128.    Onyx incorporates the allegations in Paragraphs 1 through 127 as if fully set forth herein.

129.    Onyx is the owner of the iD® Mark which it has used continuously and in connection with Onyx's goods and services prior to KhodroID's unauthorized use of its infringing ID mark.

130.    KhodroID's conduct as set forth above constitutes trademark misappropriation in violation of N.J. Stat. § 56:4.1 *et seq.*

131.    KhodroID is marketing, selling, and otherwise advertising its automotive vehicles under marks that are identical or confusingly similar variations of Onyx's iD® Mark.

132.    KhodroID's use of its infringing ID mark is likely to cause, has caused, and will continue to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of KhodroID's goods and services in that consumers and others are likely to believe KhodroID's goods and services are legitimately connected with or approved by Onyx and/or its iD® brand.

133.    Alternatively, KhodroID's use of its infringing ID mark is likely to cause, has caused, and will continue to cause reverse confusion, mistake, or deception as to the sponsorship, affiliation, or source of Onyx's iD® brand in that consumers and others are likely to falsely believe Onyx's iD® Mark and/or iD® brand are associated with KhodroID's infringing junior ID mark.

134.    KhodroID's conduct constitutes unfair competition pursuant to N.J. Stat. § 56:4-1–4-2.

52

135.    KhodroID has engaged in this conduct knowingly and willfully.

136.    KhodroID's unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

137.    As a direct and proximate result of KhodroID's conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD® Mark and brands, resulting in lost revenues and profits and diminished goodwill, in an amount as yet not fully ascertained.

138.    Onyx has no adequate remedy at law and, if KhodroID's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

## COUNT VI
### Unfair Competition in Violation Of New Jersey Common Law

139.    Onyx incorporates the allegations in Paragraphs 1 through 138 as if fully set forth herein.

140.    Onyx is the owner of the iD® Mark which it has used continuously and in connection with Onyx's goods and services prior to KhodroID's unauthorized use of its infringing ID mark.

141.    KhodroID's conduct as set forth above constitutes trademark misappropriation in violation of New Jersey common law

142.    KhodroID is marketing, selling, and otherwise advertising its automotive vehicles under marks that are identical or confusingly similar variations of Onyx's iD® Mark.

53

143.   KhodroID's use of its infringing ID mark is likely to cause, has caused, and will continue to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of KhodroID's goods and services in that consumers and others are likely to believe KhodroID's goods and services are legitimately connected with or approved by Onyx and/or its iD® brand.

144.   Alternatively, KhodroID's use of its infringing ID mark is likely to cause, has caused, and will continue to cause reverse confusion, mistake, or deception as to the sponsorship, affiliation, or source of Onyx's iD® brand in that consumers and others are likely to falsely believe Onyx's iD® Mark and/or iD® brand are associated with KhodroID's infringing junior ID mark.

145.   KhodroID's conduct constitutes unfair competition pursuant to New Jersey common law.

146.   KhodroID has engaged in this conduct knowingly and willfully.

147.   KhodroID's unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

148.   As a direct and proximate result of KhodroID's conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD® Mark and brands, resulting in lost revenues and profits and diminished goodwill, in an amount as yet not fully ascertained.

149.   Onyx has no adequate remedy at law and, if KhodroID's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

### COUNT VII

### Unauthorized Taking of Data in Violation of N.J. Stat. §2A:38A-3.

150.    Onyx incorporates the allegations in Paragraphs 1 through 149 as if fully set forth herein.

151.    Onyx is the owner of the data, data base, intangible property and information as displayed on Onyx's eCommerce platforms and Onyx's Trade Dress. Namely, Onyx maintains coded images, product content, product data, search tools and other features in order to operate its eCommerce Platforms at www.CARiD.com, www.TOOLSiD.com, www.RECREATIONiD.com, www.CAMPERiD.com, www.POWERSPORTiD.com, www.TRUCKiD.com, www.BOATiD.com, www.MOTORCYCLEiD.com and www.STREETiD.com.

152.    Without authorization, and upon information and belief, KhodroID accessed Onyx's data, data base, computer, computer programs, computer software, computer equipment, computer system or computer network necessary to operate its eCommerce platform at www.CARiD.com, www.TOOLSiD.com, www.RECREATIONiD.com, www.CAMPERiD.com, www.POWERSPORTiD.com, www.TRUCKiD.com, www.BOATiD.com, www.MOTORCYCLEiD.com and www.STREETiD.com.

153.    Without authorization and upon information, KhodroID proceeded to recklessly obtain Onyx's proprietary data, images, content, tools, software programs and other items from Onyx without its permission, for the purposes of constructing an eCommerce platform at www.khodroid.com that functions in the same fashion as Onyx's eCommerce platforms at www.CARiD.com, www.TOOLSiD.com, www.RECREATIONiD.com,

www.CAMPERiD.com, www.POWERSPORTiD.com, www.TRUCKiD.com, www.BOATiD.com, www.MOTORCYCLEiD.com and www.STREETiD.com.

154.    KhodroID's conduct as set forth above constitutes a willful violation of the New Jersey Computer Related Offenses Act as KhodroID's knowingly, intentionally, repeated and unauthorized altering, taking, and accessing of the Onyx data, data bases, intangible property and information existing on the Onyx website platforms or otherwise Onyx computer network is a clear violation of  N.J. Stat. §2A:38A-3.

155.    KhodroID is marketing, selling, and otherwise advertising its automotive products using data, intangible property and information that belongs to Onyx, existing on their website platform and computer networks.

156.    KhodroID's use of the Onyx data, data bases, intangible property and information is likely to cause, has caused, and will continue to cause damage to Onyx's business or property.

157.    KhodroID's conduct constitutes willful violation of the New Jersey Computer Related Offenses Act pursuant to N.J. Stat. §2A:38A-3.

158.    KhodroID has engaged in this conduct knowingly and willfully.

159.    KhodroID's unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

160.    As a direct and proximate result of KhodroID's conduct, Onyx has been and is likely to be substantially injured in its business and property, which not only concerns their data integrity, but also its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill, in an amount as yet not fully ascertained.

161.    Onyx has no adequate remedy at law and, if KhodroID's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

## PRAYER FOR RELIEF

WHEREFORE, Onyx prays for judgment and relief against KhodroID as follows:

A.    For preliminary and permanent injunctive relief enjoining KhodroID and any principals, agents, servants, employees, successors and assigns of KhodroID and all those in privity, concert or participation with KhodroID from:

(i)  imitating, copying, duplicating or otherwise making any use of Onyx's iD® Mark or any mark confusingly similar to Onyx's iD® Mark;

(ii) using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered or sold by KhodroID is sponsored, endorsed, connected with, approved or authorized by Onyx;

(iii) causing likelihood of confusion or injury to Onyx's business reputation and to the distinctiveness of the Onyx's iD® Mark by unauthorized use of the iD® Mark or any mark confusingly similar to the iD® Mark;

(iv) engaging in any other activity constituting unfair competition or infringement of Onyx's iD® Mark or Onyx's rights in, or to use, or to exploit the same;

(v)  assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (v) above.

57

B.      Find that KhodroID has infringed upon Onyx's iD® Mark in violation of federal and common law and damaged Onyx's goodwill by its conduct.

C.      Find that KhodroID has unfairly competed with Onyx by the acts complained of herein in violation of federal law and common law.

D.      For preliminary and permanent injunctive relief enjoining KhodroID and any principals, agents, servants, employees, successors and assigns of KhodroID and all those in privity, concert or participation with KhodroID from:

(i)  imitating, copying, duplicating or otherwise making any use of Onyx's Trade Dress or any trade dress confusingly similar to that of Onyx;

(ii) using any unauthorized copy or colorable imitation of Onyx's Trade Dress in such fashion as is likely to relate or connect KhodroID with Onyx;

(iii) using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered or sold by KhodroID is sponsored, endorsed, connected with, approved or authorized by Onyx;

(iv) causing likelihood of confusion or injury to Onyx's business reputation and to the distinctiveness of the Onyx's Trade Dress by unauthorized use of the iD trade dress or any mark confusingly similar to Trade Dress;

(v) engaging in any other activity constituting unfair competition or infringement of Onyx's Trade Dress or Onyx's rights in, or to use, or to exploit the same;

(vi) assisting, aiding or abetting another person or business entity in engaging;

58

or performing any of the activities enumerated in subparagraphs (i) through (v) above.

E.  Find that KhodroID has infringed upon Onyx's Trade Dress in violation of federal and damaged Onyx's goodwill by KhodroID's conduct.

F.  Find that KhodroID has unfairly competed with Onyx by the acts complained of herein in violation of federal law and common law.

G.  Find that the acts of KhodroID constitute a violation of N.J. Stat. §§ 56.4.1–4.2.

H.  For an order requiring KhodroID to remove any and all references to the Trade Dress, including any company or account names, logos, photographs or videos, and/or any other posts or references, from the Internet and social media outlets, such as Facebook, Instagram, LinkedIn, Twitter, and Youtube.

I.  Find KhodroID liable and award to Onyx monetary damages and restitution in an amount to be fixed by the Court in its discretion as just, including all of the KhodroID's profits or gains of any kind, resulting from KhodroID's willful infringement, dilution, and/or acts of unfair competition, said amount to be trebled and exemplary damages where applicable in view of the intentional nature of the acts complained of herein, pursuant to 15 U.S.C. § 1117 and N.J. Stat. § 56:4.2.

J.  Award to Onyx statutory damages to the full extent permitted by law;

K.  Award to Onyx its attorneys' fees, due to the exceptional nature of this case, and all of Onyx's costs and expenses of litigation pursuant to 15 U.S.C. § 1117(a) and N.J. Stat. § 56:4.2.

2981844v.1

L.  Award to Onyx pre-judgment and post-judgment interest;

M.  Grant to Onyx such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

### **JURY DEMAND**

Plaintiff Onyx Enterprises Int'l Corp. demands a trial by jury on all issues so triable.


Dated: July 2, 2020                                    Respectfully submitted,

                                                        /s/ *Maxwell L. Billek*
                                                        Maxwell L. Billek, Esq.
                                                        Michael P. Chipko, Esq.

                                                        WILSON, ELSER, MOSKOWITZ,
                                                        EDELMAN & DICKER LLP
                                                        200 Campus Drive
                                                        Florham Park, NJ  07932
                                                        973-735-6071
                                                        maxwell.billek@wilsonelser.com
                                                        michael.chipko@wilsonelser.com

                                                        /s/ *Aaron P. Bradford*
                                                        Aaron P. Bradford, Esq.
                                                        Nina Prevot, Esq.
                                                        BRADFORD, LTD
                                                        2701 Lawrence Street, Suite 104
                                                        Denver, Colorado 80205
                                                        Telephone: (303) 325-5467
                                                        Facsimile: (844) 406-5294
                                                        Email: Aaron@apb-law.com
                                                                    Nina@apb-law.com

60

2981844v.1